**STATE of Minnesota, Respondent,**

v.

**Ilene D. HOOK, Appellant.**

**No. C1–85–611.**

Court of Appeals of Minnesota.

Nov. 12, 1985.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, James D. Larson, Minneapolis, for respondent.

James J. Seifert, Edina, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

Appellant was convicted of driving under the influence of alcohol and acquitted of driving with a blood alcohol concentration of .10 percent or more after a jury trial. Appellant's motions for judgment of acquittal or a new trial were denied. We affirm.

### FACTS

Mound Police Officer William Roth saw two cars heading west on Highway 15 in Mound. He noticed the driver of the second car attempt to direct his (Roth's) attention to the first car, driven by appellant Ilene Hook. The officer followed the cars and saw appellant's car weaving back and forth in its lane. It also ran off the road several times and made a wide righthand turn.

When Roth stopped appellant, he detected a slight odor of alcohol on her breath and noted her eyes were bloodshot. Appellant admitted to having one glass of wine. Roth administered a preliminary breath test which Hook failed. He arrested her and took her to the Mound Police Depart-

ment where he read her the implied consent advisory. She consented to a breathalyzer test which showed a .28 percent blood alcohol concentration. Roth performed simulator tests both before and after appellant's test to insure the machine's accuracy.

Since appellant seemed surprised by the high blood alcohol reading, Roth offered to take her to a local hospital for a blood test. Appellant made a phone call and then refused the blood test.

Appellant's theory is that the breathalyzer machine malfunctioned during her test. She suggests that radio waves interfered with the machine's operation and resulted in an inaccurate blood alcohol concentration reading. She admitted she drove off the road "slightly" trying to avoid a pothole, but said she was always in full control of the automobile.

Hook testified that she spent the evening prior to her arrest shopping and visiting friends. She said she consumed a six ounce glass of wine at 6:00 p.m., a glass of champagne about 9:00 p.m., one and one-half glasses of beer between 10:00 and 11:00 p.m., and another glass of champagne between 11:00 p.m. and midnight.

James Newell of the Minnesota Bureau of Criminal Apprehension testified that if appellant drank alcoholic beverages at the time and in the amount she claimed her breathalyzer test reading would have been .000.

### ISSUES

1. Is the evidence sufficient to sustain appellant's conviction for driving while under the influence of alcohol?

2. Did the trial court err by not instructing the jury on the statutory prima facie defense to driving under the influence of alcohol?

### ANALYSIS

1. In reviewing sufficiency of the evidence, the court is limited to determining whether a jury could reasonably conclude that a defendant was guilty of the offense charged. The court must view the evidence in the light most favorable to the prosecution and must assume the jury believed the State's witnesses and disbelieved any contrary evidence. *State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn.1981).

Minn.Stat. § 169.121, subd. 1(a) (1984), makes it a misdemeanor to drive while under the influence of alcohol. "Under the influence of alcohol" doesn't necessarily mean that a person is inebriated or incapacitated. It includes "driving a motor vehicle while ability or capacity to drive is impaired by alcohol." *Anderson v. State,* 305 N.W.2d 786, 787 (Minn.1981) (emphasis omitted).

The supreme court cautioned against undue reliance on outward signs of sobriety such as dexterity tests in *State v. Elmourabit,* 373 N.W.2d 290, 292 (Minn.1985) (defendant found guilty of D.W.I., no blood alcohol test was given). Although the supreme court affirmed this court's reversal of Elmourabit's conviction, the court noted:

> It is not uncommon for a person under the influence of liquor, where judgment or reflexes have been impaired, to nevertheless be able to perform the tests satisfactorily.

*Id.*

■ A breathalyzer test revealed Hook had a blood alcohol concentration level of .28 percent.

> The proponent of a chemical or scientific test must establish that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability.

*State v. Dille,* 258 N.W.2d 565, 567 (1977). After a prima facie showing of trustworthy administration, the defendant must suggest a reason why the test was untrustworthy. *Tate v. Commissioner of Public Safety,* 356 N.W.2d 766, 768 (Minn.Ct.App. 1984).

Here, a prima facie showing of trustworthy administration was made. The police officer who administered the test was a qualified operator, the machine was in proper working order, the chemicals were

in proper condition, and all recommended procedures were followed.

Hook argues that radio waves interfered with the breathalyzer's operation. However, there was no evidence that any kind of radio was in use near the breathalyzer machine nor is there any evidence that this particular machine was susceptible to such interference. It is not sufficient to speculate about possible interference; there must also be some evidence of the radio interference. *See Noren v. Commissioner of Public Safety*, 363 N.W.2d 315, 318 (Minn.Ct.App.1985) (low simulator solutions did not invalidate test results in light of explanation by test administrator).

The amount, weight and credibility of the evidence are for the jury to determine. *DeMars v. State*, 352 N.W.2d 13, 16 (Minn. 1984). The jury's verdict convicting appellant of driving while under the influence is supported by the evidence.

2. Appellant claims she is entitled to a new trial because the court failed to instruct the jury that an alcohol concentration of .05 or less is prima facie evidence of innocence. Minn.Stat. § 169.121, subd. 2(a)(1984). There was no test showing a blood alcohol concentration of .05 and appellant's argument is without merit.

### DECISION

There is ample evidence on which the jury could reasonably conclude that the appellant was under the influence of alcohol. There were no fundamental errors in the trial court's instructions.

Affirmed.